**E-Filed on March 31, 2012**

**IN THE UNITED STATES DISTRICT COURT**

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:<br><br>CEDAR FUNDING, INC.,<br><br>　　　　　　　　　Debtor.<br>_____<br><br>JEFF AIKIN, et al.,<br><br>　　　　　　　　　Appellants,<br><br>　　　　v.<br><br>R. TODD NEILSON, Chapter 11 Trustee,<br><br>　　　　　　　　　Respondent. | Case No. C 09-4311 RMW<br><br>(Appeal from *Neilson v. Aikin* (*In re Cedar Funding, Inc.*), Bankr. N.D. Cal. (San Jose) Case No. 08-52709 MM, Adv. Proc. No. 08-05222 MM)<br><br>**ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING** |

　　　　On July 20, 2009, the United States Bankruptcy Court for the Northern District of California granted summary judgment in favor of R. Todd Neilson ("Trustee"), the Chapter 11 trustee for Debtor Cedar Funding, Inc. ("CFI") and against the Appellant individual investors ("Appellants") in the above referenced adversary proceeding. For the reasons set forth below, the judgment of the bankruptcy court is reversed and the case is remanded for further proceedings.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM

## I. FACTUAL BACKGROUND

The bankruptcy court set forth the factual history of CFI and its president and sole shareholder, David Nilsen ("Nilsen"), in the order below, *Neilson v. Aikin*, 2009 WL 2849122 (Bankr. N.D. Cal. July 20, 2009) (the "*Aikin* Order"), and in its Opinion and Order on Cross Motions for Summary Judgment or, Alternatively, for Summary Adjudication in *Rollins v. Neilson* (*In re Cedar Funding, Inc.*), 408 B.R. 299 (Bankr. N.D. Cal. April 10, 2009) (the "*Rollins* Order"). The *Aikin* Order incorporated the *Rollins* Order's fact summary "to the extent applicable." *Aikin* Order, 2009 WL 2849122, at *1. Appellants do not challenge the bankruptcy court's factual findings. The court therefore will not repeat the facts here except to provide necessary context.

Nilsen incorporated CFI in 2003 and used the corporate entity to make real estate loans. Each loan was secured by a deed of trust in favor of CFI. CFI's loans were in turn funded by investors who believed they were acquiring fractional interests in one of CFI's notes and the deed of trust securing its repayment (the "fractional investors"). After providing funds to CFI, the fractional investors typically received form letters on CFI letterhead thanking them for the investment identified in the letter caption. The letters indicated that the investors held a specified percentage interest in the captioned loan and advised them when to expect their first interest payment. CFI also transmitted copies of various loan documents with the acknowledgment letters. Such materials generally included: (1) executed copies of the original note and deed of trust between CFI and the borrower, (2) an executed or unexecuted Promissory Note Endorsement from CFI to the investor referencing the specific loan in which the investor had purported to invest, (3) an unexecuted copy of a Loan Servicing Agreement, (4) an unexecuted Lender/Purchaser Disclosure Statement, and (5) an unexecuted Assignment of Deed of Trust referencing the investor as an assignee of a specified percentage interest in a deed of trust executed by the borrower on the loan.

In 2004, Nilsen formed the Cedar Funding Mortgage Fund LLP (the "Fund"), a "blind pool" mortgage fund of which CFI was the sole managing member. The Fund also made real estate loans financed by investors, but instead of investing in specific loans or properties, Fund investors purchased "units" representing membership interests in the Fund. According to the Fund's solicitation materials, CFI was to hold investors' money in a subscription account until the funds

United States District Court
For the Northern District of California

were needed for investment in a mortgage loan. Although CFI and the Fund were separate legal entities, their operations and finances–including the bank accounts in which investors' monies were kept–were "interwoven from the start." *Rollins* Order, 408 B.R. at 305 (noting that "all interest payments received from borrowers, all loan pay-offs and all new investments, whether from [fractional investors] or the Fund" were deposited into the same account).

CFI and the Fund initially paid their investors monthly interest payments, even when the borrowers on the loans were not making their loan payments. However, by April 2008, CFI stopped distributing any payments to investors. During the first five months of 2008, the California Department of Real Estate ("DRE") and the California Department of Corporations instituted investigations of CFI and Nilsen. The DRE investigation found that Nilsen had failed to record deeds of trust naming the investors as beneficiaries and that in some instances, Nilsen had instead recorded deeds of trust in favor of CFI. In attempt to save his real estate license, between March 18, 2008 and May 22, 2008, Nilsen executed Assignment Deeds of Trust reflecting the fractionalized interests that each of the fractional investors held in the loans at issue. These assignments were recorded with the appropriate county recorder's offices between April 28, 2008 and May 22, 2008.

## II. PROCEDURAL BACKGROUND

CFI filed for voluntary bankruptcy under Chapter 11 on May 26, 2008. In the adversary proceeding that forms the basis of this appeal, the trustee sought to avoid liens recorded in favor of eighty-eight of the fractional investors who had paid millions of dollars to CFI in order to acquire fractional interests in various secured loans. The trustee moved for summary judgment on the ground that CFI's assignments of the fractional interests constituted preferential transfers made during the ninety-day preference period preceding CFI's filing for bankruptcy. In its order of July 20, 2009, the bankruptcy court agreed with the trustee that the assignments were preferential and granted summary judgment against all but one of the fractional investors.[1]

---

[1] The trustee withdrew his motion for summary judgment with respect to the security interest transferred to *Aikin* Defendant Andrew Foux in order to amend the complaint to correctly name the transferees of that interest. It is not clear from the record whether the trustee has so amended the complaint as of this appeal.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM 3

On September 16, 2009, appellants, representing sixty-six of the original eighty-eight fractional investors, filed a notice of appeal. The parties submitted briefing and Judge Fogel heard oral argument from counsel on April 23, 2010. The case was subsequently reassigned to this court. On February 26, 2012, twenty-nine of the sixty-six appellants voluntarily dismissed their appeal. *See* Dkt. No. 16.

### III. LEGAL STANDARD

The grant of a summary judgment motion by a bankruptcy court is reviewed de novo. *In re Sunset Bay Assoc.*, 944 F.2d 1503, 1508 (9th Cir. 1991); *see also In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996) ("[The Ninth Circuit applies] the same standard of review to the bankruptcy court findings as does the district court."). In order to affirm the bankruptcy court's order, this court must therefore conclude that there is no genuine issue of material fact which precludes a finding for the trustee as a matter of law. *In re Sunset Bay Assoc.*, 944 F.2d at 1508 (citing *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)).

### IV. DISCUSSION

**A.  Whether the Transfers of Appellants' Interests Took Place within the Ninety-Day Preference Period Under Section 547(b)**

Where a debtor transfers an interest in property within ninety days before the filing of a bankruptcy petition, the transfer may, under certain circumstances, be set aside–or "avoided"–by the trustee. *See* 11 U.S.C. § 547(b). "The purpose of [Section 547(b)] is to discourage creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy and to facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." *State Compensation Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1006 (9th Cir. 2010) (internal citation and quotation marks omitted).

In this case, the bankruptcy court concluded that the transfers in question took place when the Assignment Deeds of Trust were recorded between April 28, 2008 and May, 22 2008, less than thirty days before the initiation of CFI's bankruptcy proceeding on May 26, 2008. Appellants argue that their secured interests were instead conveyed between 2003 and February 2008, when CFI sent them either executed Promissory Note Endorsements or acknowledgment letters incorporating

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                            4

Promissory Note Endorsements in appellants' names.[2] Accordingly, appellants contend that the transfers of their fractional interests took place more than ninety days before CFI filed for bankruptcy and thus were not avoidable under Section 547(b).

### 1. The Transfers at Issue Occurred within the Ninety-Day Preference Period

For purposes of avoidance by preference under Section 547(b), property transfers are made:

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time ... ; [or]

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days.

11 U.S.C. § 547(e)(2). As this provision makes clear, a transfer is not necessarily "made" at the time that the debtor completes a transfer to the intended transferee. Rather, the court must also consider when the transfer was "perfected" to determine whether the effective date or the perfection date controls.

Under California law, a "deed of trust is not perfected until it is recorded in the office of the County Recorder." *Cortez v. American Wheel (In re Cortez)*, 191 B.R. 174, 178 (9th Cir. B.A.P. 1995) (citing Cal. Civ. Code § 1213). Here, it is undisputed that the fractionalized deeds of trust in favor of appellants were not recorded until at least April 28, 2008. Consequently, even if the transfers of appellants' interests became effective between the parties when the Promissory Note Endorsements were issued in February 2008, the assignments were not "perfected" until more than thirty days later. For avoidance purposes, the perfection date therefore controls. *See* 11 U.S.C. § 547(e)(2)(B). Because the transfers were perfected within ninety days of the filing of CFI's May 26, 2008 bankruptcy petition, they are avoidable under 11 U.S.C. 547(b).

On appeal, appellants contend that the date on which the Assignment Deeds of Trust were recorded is irrelevant because the transfers at issue were not of "an interest in a deed of trust, but of a note." (Appellants' Op. Br. at 7). It is true that the endorsement of a note may transfer ownership of

---

[2] The bankruptcy judge found that "while it may be unclear whether the signed acknowledgment letters incorporated the notes or whether CFI otherwise assigned the promissory notes to the defendants, for the purposes of this motion, I will assume that they did." *Aikin* Order, 2009 WL 2849122, at * 3. For the purpose of this appeal, the court will similarly assume the validity of the promissory note assignments.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                   5

1 the loan to the transferee even if the deed of trust is not separately assigned. *See Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d 284 (Cal. 1954). Further, the court agrees that because a promissory note may be construed as personal property, rather than real property, *see, e.g.*, *Hoxie v. Bryant,* 131 Cal. 85, 88 (Cal. 1900), *Jubelt v. Sketers*, 84 Cal. App. 2d 653, 655 (Cal. App. 1948), perfection of a note assignment under § 547(e) may not depend on the recordation date, but rather the date "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B).

However, appellants' argument misses the point. It may be that *some* interest was transferred to appellants at the time the notes were assigned. However, the transfers of appellants' *secured* interests were not enforceable against third parties–and thus not "perfected" within the meaning of § 547(e)–until they were recorded. *See* 11 U.S.C. § 547(e)(1)(A) ("A transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee."); *In re Cortez*, 191 B.R. at 178 (deed of trust must be recorded to bind subsequent purchasers). As the transfers were perfected during the preference period, there is no issue of material fact as to whether they are subject to avoidance under Section 547(b).[3]

**B.   Whether the Fractional Interests are Excludable from the Debtor's Estate Under Section 541(d)**

Alternatively, appellants argue that the transfers at issue cannot be avoided because appellants' agreements with CFI created a "resulting trust" that simply removed their property interests from CFI's bankruptcy estate. 11 U.S.C. § 541(d) excludes from the bankruptcy estate "property in which the debtor holds . . . only legal title and not an equitable interest." Consequently, property "held in trust by the debtor for another" is not part of the bankruptcy estate, and therefore not subject to the provisions of the bankruptcy code voiding preferential transfers. *Mitsui Mfrs. Bank*

---

[3]   Contrary to appellants' argument, *In re Kang Jin Hwang*, 396 B.R. 757 (Bktcy. C.D. Cal. 2008) does not compel the conclusion that the interests at issue here were transferred with the note assignments. *In re Kang Jin Hwang* found that a bank that was *both* the transferee of a deed of trust and the "holder" of a supporting promissory note under the California Commercial Code could enforce the note to foreclose on the underlying property. *See In re Kang Jin Hwang*, 396 B.R. at 765. Because appellants have not shown that they were properly assigned the deeds of trust outside the preference period, *In re Kang Jin Hwang* is inapposite here.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                                            6

*v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 324 (9th Cir. 1994).

"A resulting trust is a trust implied by operation of law to enforce the inferred intent of the parties to establish a trust." *Golden Mortgage Fund # 14 v. Kennedy (In re Golden Triangle Capital)*, 171 B.R. 79, 82 (B.A.P. 9th Cir. 1994). In bankruptcy, a court may impose a resulting trust as an equitable remedy where property was transferred to the debtor "under circumstances showing that the [debtor] was not intended to take the beneficial interest." *In re Foam Systems Co.*, 92 B.R. 406, 409 (B.A.P. 9th Cir. 1988) (citing *American Motorists Insurance Co. v. Cowan*, 127 Cal. App. 3d 875 (Cal. Ct. App. 1982)); *In re Golden Triangle Capital*, 171 B.R. at 83 (finding that funds provided by claimant were excluded from bankruptcy estate under an express or resulting trust theory where debtor "was intended to be a mere conduit for the funds" at issue); *cf. In re Fidelity Standard Mortg. Corp.*, 36 B.R. 496, 500 (Bankr. S.D. Fla. 1983) (applying equitable principles to protect the unperfected interests of investors in a mortgage investment scheme under Section 541(d)).

In their briefing, the parties spend a good deal of time quibbling over whether appellants seek the imposition of a "resulting trust," a "constructive trust," an "equitable lien" or other form of equitable remedy. However, as the Ninth Circuit has explained, the court's analysis should focus not on labels, but on "the legal relationship between the parties." *Id.* at 82. The central issues in determining if the court may impose an equitable remedy to protect appellants' interests thus become: (1) whether a debtor-creditor relationship existed between appellants and CFI, and (2) whether appellants can trace the funds they contributed to the interests they seek to preserve. *See id.* at 82-84.

### 1. Existence of a Debtor-Creditor Relationship

The court finds that there is a genuine issue of material fact as to whether the parties intended to create a debtor-creditor relationship. Paragraph 5.0 of the Loan Servicing Agreement sent by CFI to each fractional investor provides: "[CFI] shall retain custody as agent for Lender of the original note and deed of trust for the Loan ... If [CFI] retains custody ... the deed of trust or assignment shall be recorded in accordance with Business and Professions Code Section 10233.2." *See, e.g.*, Dkt. No. 101-7 (Exhibit B to Declaration of Bert Baumer), *Neilson v. Aikin* (*In re Cedar Funding, Inc.*),

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                                       7

Bankr. N.D. Cal. (San Jose), Adv. Proc. No. 08-05222 MM.[4]  By describing CFI as an "agent" retaining "custody" of the note and deed of trust, this language suggests that CFI was not intended to take the beneficial interest in the underlying property, but rather to temporarily maintain such interest until the requisite documents were properly recorded in the investor's names. *See In re Destro*, 675 F.2d 1037, 1038 (9th Cir. 1982) (imposing an equitable lien on property in favor of a claimant where the debtor failed to record two deeds of trust in the claimant's name despite a contractual obligation to do so).

Furthermore, the acknowledgment letters accompanying the Loan Servicing Agreements identify the "borrower" not as CFI, but as the recipient of the underlying loan. *See, e.g.*, Exhibit B to Declaration of Bert Baumer.  The Promissory Note Endorsements similarly identify the borrower as the loan recipient. *See id.*  In addition, the Assignment Deeds of Trust also set forth the specific percentage of each property owned by the investor, naming the investor as beneficiary and the ultimate borrower as "trustor." *See id*.  Although these documents were generally unexecuted, this evidence is consistent with appellants' contention that they "never intended to loan money to [CFI], but instead were loaning money to [the ultimate borrowers]."  (App. Opp. Br. at 19).

Finally, despite the fact that appellants received distributions regardless of whether the borrowers made their loan payments, the Loan Servicing Agreement provides no contractual guarantee of repayment or compensation in case of foreclosure.  Instead, Paragraph 7.0 of the agreement indicates that upon foreclosure, the investor either takes title to the underlying property or, if the loan at issue is financed by multiple lenders, that CFI will sell the property as approved by a majority of the lenders. *See* Exhibit B to Declaration of Bert Baumer.  "Such assumption of risk strongly suggests that the [fractional] investors were not in a creditor-debtor relationship with [CFI]." *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 709 (9th Cir. 1986).  Construed in the light most favorable to appellants, the record indicates that CFI was "intended to be a mere conduit

---

[4]  Apart from the fact that only some of the fractional investors were sent executed Promissory Note Endorsements, the parties have not suggested that there are any relevant differences in the investment documents received by each appellant from CFI.  The court will therefore assume that the documents attached to the declaration of appellant Bert Baumer are reflective of those received by the other fractional appellants.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                                  8

for the funds" supplied by the fractional investors, rather than their debtor. *In re Golden Triangle Capital*, 171 B.R. at 83.

On the other hand, in granting summary judgment for the trustee, the bankruptcy court found no evidence of an intent to enter a trust relationship. Instead, the court determined that "the intent of the fractionalized interests in CFI's deeds of trust was to provide [appellants] with security for recouping the investment they placed with CFI." *Aikin* Order, 2009 WL 2849122, at *6. Relying on *In re Foam Systems Co.*, 92 B.R. 406, the bankruptcy court concluded that "intent to establish a security interest rather than a trust does not provide a basis for imposing a resulting trust to remedy the failure to perfect the security interest." *Id.*

This court finds *In re Foam Systems Co.* to be distinguishable from instant case. There, an insurance company issued an advance payment for a bond intended to indemnify one of the debtor's suppliers in the event that the debtor misused the supplier's funds. The bond payment was placed in a bank account in the debtor's name, and the insurance company retained control over the account. After the debtor declared bankruptcy, the Ninth Circuit upheld the trial court's refusal to impose a resulting trust over the bank account on behalf of the insurance company, finding that "the express intent of the parties was that [the insurance company] have a lien on the account as security for its undertaking as surety for the debtor." *In re Foam Systems Co.*, 92 B.R. at 409.

Unlike *In re Foam Systems Co.*, the record here does not make clear that appellants intended their acquisition of the fractionalized interests in the notes and deeds of trust to serve simply as "security" for the recoupment of their investments from CFI. Indeed, it is equally plausible that appellants intended to acquire an interest in the note and deed of trust, and understood CFI to merely be responsible for transferring their share of the loan payments from the borrowers at regular intervals. In addition, while the creditor in *In re Foam Systems Co.* was a sophisticated corporate entity that presumably understood the nature of its legal relationship with the debtor, appellants here are primarily individuals who, if their declarations are to be believed, thought they "had purchased an interest in [a] loan." Declaration of Bert Baumer ¶ 4. Thus, while the court is conscious of appellants' burden at trial to show "clear and convincing proof" of their intent to enter into a trust relationship with CFI, *Johnson v. Johnson*, 192 Cal. App. 3d 551, 556 (Cal. Ct. App. 1987), the

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                                                 9

1  record provides sufficient evidence of such intent to withstand the trustee's motion for summary
2  judgment.

### 2. Traceability of Appellants' Interests

The trustee next argues that appellants are barred from equitable relief because they cannot trace their contributions into a "commingled account containing funds received from all Cedar Funding investors." (Opp. Br. at 12). Only "traceable funds in which the debtor never acquired a beneficial interest do not become part of the bankruptcy estate." *In re Golden Triangle Capital*, 171 B.R. at 84; *Cunningham v. Brown*, 265 U.S. 1, 11 (1924) (finding in the original Ponzi scheme case that claimants were not entitled to equitable relief because they could not trace their property within Ponzi's bank account).

While it may not be possible to trace the specific monetary contributions of each appellant given CFI's accounting practices, the Assignment Deeds of Trust identify the percentage of each property purportedly owned by each fractional investor. *See, e.g.*, Exhibit B to Declaration of Bert Baumer (noting that Mr. Baumer owns an undivded 3.333% interest in property purchased by borrower Carol Fredrick). Thus, to the extent that appellants assert an equitable interest in the *deeds of trust*, rather than the dollars they invested with CFI, appellants can "clearly, convincingly and unambiguously" identify their precise ownership stake. *Laing v. Laubach*, 233 Cal. App. 2d 511, 517 (Cal. Ct. App. 1965). As such, the grant of summary judgment for the trustee regarding the transfers of such interests is not warranted.

### 3. Applicability of Section 541(d) Despite CFI's "Bad Business Practices"

Finally, the trustee contends that even if appellants have an equitable interest in the property at issue, where a transfer was "part of a broader fraudulent scheme ... courts will not allow transferees to benefit from § 541(d) at the expense of other similarly-situated parties." (Opp. Br. at 16). The bankruptcy court made a similar finding, noting that "CFI's bad business practices, including the commingling of investment monies from individual investors with payments from borrowers, precludes the recognition of an equitable lien in favor of any particular claimant. To prefer one claimant by awarding an equitable lien would be unfair to potential competing equitable claims to the same property." *Aikin* Order, 2009 WL 2849122, at *6.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                                                10

As an initial matter, it appears that under Ninth Circuit precedent, where no debtor-creditor relationship exists, the question of whether a claimant should be allowed to benefit at the expense of other creditors is irrelevant. *See In re Golden Triangle Capital*, 171 B.R. at 83 (where claimant is not a creditor, but a trustee, "a determination whether [the claimant] should be permitted to fare better than other creditors would be an illogical exercise."). Furthermore, even if such concerns are taken into consideration, the court finds that the circumstances here do not preclude the application of Section 541(d) to preserve appellants' equitable interests.

It is true, as the trustee argues, that some lower courts have declined to extend the equitable protections of Section 541(d) to investors in plainly fraudulent mortgage-investment schemes on the grounds that the provision was enacted in part to protect the *lawful* operation of the secondary mortgage market. *See, e.g.*, *In re Lemons & Associates, Inc.*, 67 B.R. 198, 211 (Bankr. D. Nev. 1986); *Corporate Fin. v. Fidelity Nat'l Title Ins. Co. (In re Corporate Fin.)*, 221 B.R. 671, 682 (Bankr. E.D.N.Y. 1998). Noting the strong policy favoring equal distribution under bankruptcy law, such cases have found that because the debtor perpetrated its fraud on most or all of its investors, it would be both unfair and inconsistent with the intent of Section 541(d) to give preferential treatment to a particular group of claimants. However, these cases each emphasized that the schemes at issue involved investors who were "similarly situated from an equitable point of view." *In re Lemons & Associates, Inc.*, 67 B.R. at 212; *In re Corporate Fin.*, 221 B.R. at 682 ("The application of § 541(d) to the instant case [would] create an inequitable result among similar investors"). The courts thus refused to follow the dictate of Section 541(d) because doing so would allow similarly situated investors to "benefit from the fraud practiced on others." *In re Lemons & Associates, Inc.*, 67 B.R. at 213.

By contrast, the fractionalized investors here expressly elected to avoid the "pooling concept" in which the Fund investors participated in favor of the benefits–and the added risks–of investing in specific securities. Appellants are therefore not similarly situated to the Fund investors. Indeed, to deny them the protection to which they are entitled under statute because of CFI's misconduct would, in effect, penalize them for choosing their investments more selectively. Furthermore, while the parties disagree as to whether CFI's business practices were fraudulent or merely negligent, the

trustee cites no evidence establishing that CFI's failure to record assignments of the deeds of trust was the result of fraud. Accordingly, it does not appear that preserving appellants' interests would contravene the purpose of Section 541(d) to encourage participation in the secondary mortgage market.

Under similar circumstances, the Bankruptcy Court for the Southern District of Florida found that Section 541(d) was applicable, and developed the following standard for determining which investors would be allowed to retain their interests:

> If the investor and debtors agreed on what specific mortgage interest was to be assigned to the investor, with the debtors' assent being evidenced by any writing which links the investor and the specific mortgage interest; if the investor paid in full for the mortgage interest; and if that mortgage was in existence (having been funded and not repaid or foreclosed); then the plaintiffs' interests in the various mortgages should be protected under § 541(d).

*In re Fidelity Standard Mortgage, Corp.*, 36 B.R. at 500. While such a test may benefit the fractional investors over innocent Fund investors with equitable claims to the same property, this court finds *In re Fidelity Standard Mortgage*'s reasoning persuasive. Appellants may meet such criteria.[5] The judgment of the bankruptcy court is reversed and the adversary proceeding is remanded.

## V.  ORDER

For the foregoing reasons, the court vacates the judgment of the bankruptcy court and remands this action for further proceedings to determine whether the debtors' transfers to the appellants can be avoided.

DATED:      March 31, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

---

[5] It is not clear from the record before the court how many of the mortgages in which appellants invested were in existence at the time the interests were transferred. Insofar as this issue is in dispute, the bankruptcy court may require further factual findings before determining which of the appellants retain their equitable property interests.

Case No. C 09-4311
ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT AND REMANDING
EDM                                    12